IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

MICHAEL J. GREENE,

     Petitioner,

v.                               CIVIL ACTION NO. 1:19-00570

CHARLES WILLIAMS, Superintendent,
Huttonsville Correctional Center,

     Respondent.

<u>MEMORANDUM OPINION AND ORDER</u>

By standing order, this matter was referred to Magistrate Judge Dwane L. Tinsley for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Tinsley submitted his Proposed Findings and Recommendation ("PF&R") on July 29, 2020, in which he recommended that this court grant respondent's motion to dismiss and motion for summary judgment; deny petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254; deny petitioner's motion for relief based upon no answer to petition; and dismiss this matter from the court's active docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Tinsley's PF&R. Pursuant to § 636(b)(1)(C), the court need not conduct a *de novo* review of the PF&R when a party "makes general and conclusory objections that do not direct the court to a specific error in the

magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  Petitioner submitted timely objections to the PF&R on August 5, 2020.  On August 28, 2020, Greene filed a notice advising the court of other cases.

Under 28 U.S.C. § 2254, Greene is entitled to federal habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Section 2254(d) provides that when the issues raised in a § 2254 petition were raised and considered on the merits in State court habeas proceedings, federal habeas relief is unavailable unless the State court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal habeas Court may grant habeas relief "if the State court arrives at a conclusion opposite to that reached by this Court on a question of law or if the State court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. 362, 412-13 (2000).  A federal habeas court may grant relief under the "unreasonable application" clause

-2-

of § 2254(d)(1) where the State court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. In determining whether the State court's decision was contrary to, or was an unreasonable application of, Supreme Court precedent, all factual determinations by the State court are entitled to a presumption of correctness. See 28 U.S.C. § 2254(e).

A state court's decision is "contrary to" clearly established federal law when it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams, 529 U.S. at 405-06. A state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d)(1) "if the state court identifies the correct governing legal rule from . . . [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "The state court's application of clearly established federal law must be 'objectively unreasonable,' and 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Robinson v. Polk, 438 F.3d 350, 355 (4th Cir. 2006) (quoting Williams, 529 U.S. at 411). Moreover, when "assessing the reasonableness of the state court's

-3-

application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir. 2003) (quotation marks omitted).

Against this backdrop, the court has carefully considered petitioner's objections and reviewed the record de novo. The court concludes that all of Greene's objections to the PF&R are without merit. Given that Greene's objections mirror his arguments considered and rejected by the magistrate judge, it would serve no useful purpose for the court to address each of those objections and go through the exercise of reiterating the findings of fact and conclusions which are already set forth in Magistrate Judge Tinsley's comprehensive and well-reasoned PF&R. Accordingly, the court **OVERRULES** Greene's objections for the same reasons stated in the PF&R. The court will, however, separately address a few points raised in petitioner's objections.

A.   *"Intentionally Ignor[ing] the facts"*

Greene quarrels with Magistrate Judge Tinsley's reliance on the decision of the Supreme Court of Appeals of West Virginia in his recitation of the factual and procedural background. According to petitioner, the PF&R "intentionally ignor[ed] the facts stated in my reply to respondent's answer to petition. . . with all declarations, and all exhibits filed in support." ECF No. 63 at 1. However, as Greene himself states in the aforementioned reply, "[t]he facts of case [are] not in dispute." ECF No. 43 at 1. Furthermore, § 2254

-4-

itself provides that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1) (emphasis added); Watkins v. Rubenstein, 802 F.3d 637, 643 (4th Cir. 2015).  Greene has not rebutted the state court's findings with "clear and convincing evidence" and, therefore, his objection is **OVERRULED**.

B.  *Violation of Plea Agreement*

In January 2010, when Greene was sixteen years of age, he was arrested and charged as a juvenile with the murder of Clayton Mitchum in Mercer County, West Virginia.  Although that charge was ultimately dismissed, a subsequent juvenile petition was filed in February 2011 charging Greene with the First Degree Murder of Mitchum.  Subsequent to the filing of that petition, Greene was also charged with three counts of Delivery of a Schedule II Narcotic.

In 2012, counsel for Greene negotiated a plea agreement to resolve all outstanding charges against Greene.  Pursuant to the terms of that agreement, Greene would plead guilty to the three counts for delivery of a controlled substance and would "be subject to the custody of the Division of Juvenile Services until his 21st birthday."  ECF No. 33-5.  As to the murder charge, Greene would consent to the filing of an information, waive transfer to adult jurisdiction, and enter a "Best Interest Plea" to First Degree

Robbery as an accessory.  See id.  The State agreed, pursuant to Rule 11(E)(1)(c), to:

A)   A determinate 20 year cap on the sentence;

B)   A suspended sentence (Probation) consecutive to release from juvenile custody;

C)   Deferred adjudication of guilt; whereby Defendant would be allowed to withdraw his plea and the case would be dismissed upon Defendant's successful completion of probation; or successful completion of a two-year Associates degree program or an equivalent trade-school certification.

Id.  On June 18, 2012, Greene entered a guilty plea as an adult to First Degree Robbery as an accessory and as a juvenile to the three counts of Delivery of Schedule II Narcotics.

On May 24, 2013, prior to his 21st birthday, the Circuit Court found that Greene had successfully completed the Division of Juvenile Services Program at the West Virginia Industrial Home for Youth on May 23, 2013.  Defendant was placed on supervised probation for a term of five years pursuant to his plea agreement with respect to the First Degree Robbery charge.  Four days later, a petition to revoke his term of probation was filed.  Ultimately, Greene's probation was revoked and he was sentenced to 20 years in the penitentiary.

Greene contends that, under the terms of his plea agreement, he was subject to the custody of the Division of Juvenile Services until his 21st birthday.  Therefore, according to him, he could not be subject to adult jurisdiction until he turned 21 years of age.

-6-

However, read in its entirety, the plea agreement does not support Greene's argument.  Greene cherry picks one sentence from the plea agreement to support his position but, in doing so, takes that sentence out of context and completely ignores the rest of the agreement.  The plea agreement itself makes clear that Greene was to be in juvenile custody for purposes of his controlled substances offenses only and that said custody could continue until his 21st birthday.  There is nothing in the plea agreement to suggest that Greene could not be released from juvenile custody prior to his 21st birthday.  Furthermore, the plea agreement makes clear that Greene would begin serving his sentence on the robbery charge as an adult "consecutive to release from Juvenile custody."  ECF No. 33-5.

In addition, the plain language of the plea agreement is consistent with the plea colloquy.  As the PF&R noted, Greene's guilty pleas were entered voluntarily and with a full understanding of the consequences of doing so.  The circuit court judge explained exactly how the guilty pleas to the various charges would work and Greene acknowledged his understanding of the same.  In particular, the circuit court explained to Greene that his robbery sentence would start to run upon his release from juvenile custody and that might happen prior to his 21st birthday:

Court:          And would put you on probation and the probation would start to run after you're released from juvenile custody.  From juvenile jurisdiction.  Do you understand that?

-7-

                              Either after you complete the Glen Mills
                              Program or you complete the program at the
                              Industrial Home?  Do you understand that?

      Greene:            Yes, sir.

      Court:             **One of those, or you turn 21.  Which one . . .**
                              **which ever occurs first I guess**.  Alright.

ECF No. 33-10 at 19 (emphasis added); see also id. at 27 ("What

would happen after you completed your juvenile sentence you'd be

placed on probation.").  In response to specific questioning from

Greene, the court again told Greene that his juvenile custody could

be terminated prior to his turning 21 years of age:

      Court:             The worst thing that can happen to you on the
                              juvenile charges is that you're locked up until
                              you're 21.  That's the wors[t] that can happen
                              to you on the juvenile charges.  And you would
                              be in a juvenile facility.  Not in jail.
                              Alright?

      Greene:            Yes, sir.

      Court:             The wors[t] thing that could happen to you on
                              the robbery charge if you violate your
                              probation is you could go to jail for up to 20
                              . . . 20 years.  Alright.  Do you have any
                              questions about any of this?

      Greene:            Well, if I go . . . if I went to the Industrial
                              Home would that be a program, too?

      Court:             They have a program up there where you get an
                              ed . . . where you finish your . . . you know,
                              they put you in school.  Try to get you to
                              finish your high school diploma.  They've got
                              some vocational program.  It's a . . . it's a
                              juvenile facility so it's not prison.  It's a .
                              . . they do-

      Attorney:       He's already been there.

```
Defendant:    I mean, I've been there.  I just . . . I was
              just wondering because like you know it is
              until I turn 21, you know what I'm saying, so
              I'm thinking like will I be up there -

Court:        Well, if you complete the program before you're
              21 then I guess you would start your probation
              before on your other charge before you're 21.
              I mean, they don't have to keep you until
              you're 21.

Greene:       I can . . . I can -

Court:        That's the longest they can keep you is until
              you turn 21.

Greene:       I can -

Court:        That's the longest they can keep you until
              you're 21.

Greene:       So if I completed, you know, I'd probably I
              mean, I'm asking -

Court:        If you completed it in a year than you'd be out
              in a year and you'd start the probation on the
              other charge.

Greene:       Alright.
```

Id. at 40-42 (emphasis added).  Based on the foregoing, Greene's objection regarding the State's alleged breach of his plea agreement is **OVERRULED**.

C.    *Ineffective Assistance of Counsel*

The PF&R found that Greene's claims of ineffective assistance of counsel were unexhausted and, therefore, should be dismissed. In his objections, Greene does not address this finding but, rather, merely reargues the merits of his ineffective assistance of counsel claims.  Because Greene's objection does not point to an

-9-

error in Magistrate Judge Tinsley's finding on the issue of exhaustion, his objection is **OVERRULED**.

Petitioner's objections are therefore **OVERRULED**.  The court **ADOPTS** the findings and conclusions contained in Magistrate Judge Tinsley's PF&R, **GRANTS** respondent's motion to dismiss and motion for summary judgment; **DENIES** petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254; **DENIES** petitioner's motion for relief based upon no answer to petition; and **DISMISSES** this matter from the court's active docket.

Additionally, the court has considered whether to grant a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>Rose v. Lee</u>, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion to all counsel of record and to petitioner, pro se.

-10-

**IT IS SO ORDERED** this 29th day of September, 2020.

ENTER:

David A. Faber
Senior United States District Judge